## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

| | |
|---|---|
| **WILLIAM TODD JACKSON,** ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 3:14-24834** |
| ) | |
| **CAROLYN. W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
|     **Defendant.** ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Standing Order entered August 21, 2014 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings (Document Nos. 13 and 14.), and Plaintiff's Reply. (Document No. 15.)

The Plaintiff, William Todd Jackson, (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on July 15, 2011 (protective filing date), alleging disability as of January 1, 2009, due to limited mobility of the upper body, arthritis, back and joint problems, foot problems, and high blood pressure.[1] (Tr. at 17, 164-65, 166-73, 179, 184.) The claims were denied initially and upon reconsideration. (Tr. at 17, 56-63, 64-71, 72-73, 74-80, 81-87, 88-898, 90-92, 101-03, 105-07, 108-10, 112-14.) On January 5, 2012, Claimant requested a hearing before an

---

[1] On his form Disability Report - Appeal, dated December 2, 2011, Claimant asserted that he was having more back problems and limited mobility. (Tr. at 216.)

Administrative Law Judge (ALJ). (Tr. at 8, 115-18.) A hearing was held on January 23, 2013, before the Honorable Maria Hodges. (Tr. at 25-55.) By decision dated February 1, 2013, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 17-24.) The ALJ's decision became the final decision of the Commissioner on June 23, 2014, when the Appeals Council denied Claimant's request for review. (Tr. at 1-7.) Claimant filed the present action seeking judicial review of the administrative decision on August 19, 2014, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2013). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall

v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2013). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(C) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of

> Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, January 1, 2009. (Tr. at 19, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "degenerative disc disease, degenerative joint disease of the bilateral shoulders and left elbow, bilateral carpal tunnel syndrome, and depressive disorder," which were severe impairments. (Tr. at 19, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 19, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity for light work, as follows:

> [C]laimant has the residual functional capacity to perform medium work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except he can occasionally climb, balance, stoop, kneel, crouch, and crawl; he can occasionally reach overhead with the bilateral upper extremities; and he can frequently reach in other directions with the bilateral upper extremities. He should avoid concentrated exposure to cold, vibrations and hazards. He can occasionally handle with the left arm and frequently finger

5

bilaterally. He is able to perform work involving simple tasks and instructions. (Tr. at 21, Finding No. 5.) At step four, the ALJ found that Claimant was unable to perform his past relevant work. (Tr. at 22, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a cashier, an order clerk, and, at the unskilled, light level of exertion and as a surveillance system monitor, credit card information verifier, and grader/sorter, at the unskilled, sedentary level of exertion. (Tr. at 23-24, Finding No. 10.) On this basis, benefits were denied. (Tr. at 24, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on December 19, 1961, and was 51 years old at the time of the administrative hearing on January 23, 2013. (Tr. at 23, 29, 164, 166.) The ALJ found that Claimant had at least a high school education and was able to communicate in English. (Tr. at 23, 29, 183, 185.) In the past, he worked as a body shop supervisor and repairman. (Tr. at 22, 31, 50, 185.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will summarize it and discuss it below in relation to Claimant's arguments.

On September 4, 2012, Kip Beard, M.D., examined Claimant at the request of the State agency disability determination service. (Tr. at 389-401.) Claimant reported

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred at step three of the sequential analysis (Document No. 13 at 8-9.) Claimant asserts that although the ALJ observed and followed the special technique in analyzing mental impairments, such analysis had no basis because the record failed to contain any mental health opinion. (Id. at 9.) Claimant asserts that because he was diagnosed with depression approximately six weeks prior to the administrative hearing, time did not allow for full development of the mental impairment. (Id.) He asserts that pursuant to 20 C.F.R. §§ 404.1517 and 416/917, the ALJ should have ordered a consultative examination. (Id.) Because the ALJ failed to order such examination, Claimant contends that the "special technique evaluation was based on conjecture rather than on medical evidence pertaining to the severity of [Claimant's] symptoms and a mental health source's opinion as to the limitations that were caused by his symptoms. (Id.)

In response, the Commissioner asserts that because the ALJ had ample evidence regarding

7

Claimant's mental functioning, including treatment records at Exhibits 6F, 8F, 9F, and 10F, as cited by the ALJ, which demonstrated no more than a moderate degree of mental functioning limitations, the ALJ was not required to develop the record and order a consultative examination. (Document No. 14 at 9.) Treatment records set forth in Exhibit 10F reveal that Claimant did not experience anxiety, depression, or poor concentration, and that he was undergoing testing to begin a volunteer position at a school. (Id.) The ALJ therefore, concluded that Claimant had only moderate deficits in concentration, persistence, or pace. (Id.) The Commissioner asserts that the ALJ was permitted to reach such a conclusion from the straightforward medical evidence without further expert assistance. (Id.) The Commissioner notes moreover, that Claimant testified that his mental issues had resolved within a couple of months and his treating physician's notes confirmed his testimony. (Id. at 10.) Furthermore, Claimant's counsel failed to request such an evaluation at the administrative level. (Id.) Accordingly, the Commissioner contends that Claimant's argument is without merit. (Id.)

Claimant asserts in reply that the medical records relied upon by the ALJ regarding her mental impairments and functional limitations consisted of physical impairments by his treating physician and a pain clinic. (Document No. 15 at 1.) Though the Commissioner argues that an absence of evidence actually is evidence of no impairment or limitations, Claimant contends that the ALJ should have ordered a consultative evaluation because the ALJ's findings without it, were speculative. (Id. at 1-2.) Claimant relies on the decision in Kersey v. Astrue, 614 F.Supp.2d 679 (W.D. Va. 2009), to require the ALJ to order a consultative evaluation when the evidence is insufficient to support a decision on the claim. (Id. at 2.) He asserts that the ALJ's failure to order such an evaluation resulted in the ALJ's special technique having been based on conjecture rather than medical evidence. (Id. at 3.)

Claimant also alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing his RFC. (Document No. 13 at 10-11.) Claimant notes that the ALJ assessed moderate limitations in his ability to maintain concentration, persistence, or pace but asserts that the ALJ assessed an RFC that included only a limitation to performing work that involved simple tasks and instructions. (Id. at 10.) Claimant asserts that such limitations are not equal. (Id.)

In response, the Commissioner asserts that the ALJ found that despite moderate limitations in concentration, persistence, or pace, the medical evidence and Claimant's testimony established that he retained the ability to perform simple tasks, follow simple instructions, and timely complete work tasks in a work setting. (Document No. 14 at 12.) The Commissioner contends that the end result of Claimant's moderate limitations was that he could do simple tasks on a consistent basis. (Id.) The ALJ then conveyed that end result, that Claimant remained able to perform simple work tasks and instructions, into a hypothetical question to the VE. (Id.) The Commissioner cites Holley v. Commissioner, 2014 WL 5334468, at *1 (3d Cir. 2014), as a case factually similar to the present matter. The Commissioner asserts that in Holley, the Third Circuit found no error when the ALJ concluded that despite moderate limitations in concentration, persistence, or pace that the claimant retained the ability to performs tasks that could be learned in 30 days or less and then communicated the RFC assessment to the VE. Id. The Court found that nothing more was required of the ALJ. Id. Accordingly, the Commissioner contends that the ALJ's RFC assessment is supported by the substantial evidence of record. (Id. at 14.)

In reply, Claimant cites to a case out of the Southern District of Ohio, in which the ALJ the District Court concluded that it was error for the ALJ not to include restrictions against fast-faced or quote driven work in the RFC when the evidence established moderate limitations in

9

concentration, persistence, or pace. See Crooks v. Commissioner, 2014 WL 2608170 (S.D. Ohio June 11, 2014.) (Document No. 15 at 3.) In the instant matter, Claimant contends that it was error for the ALJ to exclude limitations from her controlling hypothetical question that accounted for all of Claimant's severe impairments. (Id. at 4.)

Analysis.

1. Step Three Analysis.

Claimant first alleges that the ALJ erred at step three of the sequential analysis when she when she failed to order a consultative examination for the assessment of functional limitations regarding her mental impairments. (Document No. 13 at 8-9.) At step three of the sequential analysis, if a severe impairment is present, the Commissioner is required to determine whether such impairment meets or equal any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. 20 C.F.R. §§ 404.1520(d), 416.920(d). When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). This special technique requires the Commissioner (1) to evaluate the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment, (2) to rate and document the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c), (3) to determine the severity of the functional areas (activities of daily living; social functioning; and concentration, persistence, or pace; and episodes of decompensation for extended duration) , and (4) if the claimant's impairment(s) is/are deemed severe, the Commissioner must compare the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the

appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). If the Commissioner finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels.

In this matter, the ALJ determined at step three of the sequential analysis that Claimant's severe mental impairment, depressive disorder, resulted in no limitations in maintaining activities of daily living and social functioning; moderate deficiencies in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. (Tr. at 20.) Regarding the moderate limitations in concentration, persistence, or pace, the ALJ found that the medical evidence of record and Claimant's testimony indicated that he was limited "to work involving simple tasks and instructions." (Id.) The ALJ therefore concluded that Claimant would experience moderate deficiencies of concentration, persistence, or pace. (Id.) In reaching this conclusion, the ALJ relied on Exhibits 6F, 8F, 9F, and 10F,

Exhibit 6F contained the treatment records from Dr. Michael Shramowiat, Claimant's primary care physician, on October 21, 2011, and November 3, 2011. (Tr. at 20, 318-22.) These records however, evidenced Claimant's physical impairments and did not reference any mental impairment or complaint. (Id.)

Exhibit 8F contained the treatment records from Dr. Michael Shramowiat, another treating physician, from December 1, 2011, through October 11, 2012. (Tr. at 20, 325-36.) These records, too, did not reference any mental impairment or complaint. (Id.)

Exhibit 9F contained the treatment records from Pleasant Valley Hospital, from September

18, 2011, through April 2, 2012. (Tr. at 20, 337-50.) On September 18, 2011, Claimant presented to the pain clinic for an injection, at which time it was noted that he was alert, oriented, and exhibited clear and coherent speech. (Tr. at 340.)

Exhibit 10F contained the treatment records from Valley Health Gallipolis Ferry from August 4, 2009, through May 23, 2012. (Tr. at 20, 351-401.) Treatment notes indicate that on August 4 and 21, March 8, and September 9, 2010, and on May 2, September 2, and October 3, 2011, it was not indicated on form treatment notes that Claimant presented with any psychological symptoms. (Tr. at 20, 354, 358, 360, 362, 364, 366, 368.) In September 2011, and on May 23, 2012, it was indicated that the only psychological symptom marked was that of poor sleep. (Tr. at 351-52, 356.) On May 23, 2012, Claimant reported poor sleep patterns because he was unable to get his "mind to shut up until 3am." (Tr. at 352.)

In addition to the medical evidence specifically cited by the ALJ, the remaining medical evidence demonstrated that on July 24, 2008, Claimant used a daily antidepressant. (Tr. at 489.) On March 17, 2009, it was indicated that Claimant had a psychiatric history of depression. (Tr. at 269.) On September 18, 2011, it was noted that Claimant had a past diagnosis of depression. (Tr. at 337.) On November 19, 2012, a treating physician made noted that Claimant was then currently having some problems with depression, for which he was started on Prozac 10mg. (Tr. at 548.) On January 18, 2013, Claimant reported that he was doing better with the Prozac and he was continued on the same dosage. (Tr. at 546.) Claimant testified at the administrative hearing on January 23, 2013, that he was placed on Prozac about two months prior because he was grumpy, grouchy, and hard to get along with. (Tr. at 42.) He further testified that the Prozac helped, that he did not seem to have any continued problems, and that the irritability was gone. (Id.) He also stated that he was able to get along with other people and that his sleep had improved since he started the Prozac. (Tr. at 42-43.)

In view of the foregoing, it is apparent that the medical evidence failed to establish any severe mental impairment, as the ALJ determined, and consequently a lack of significant mental functional limitations. (Tr. at 21.) The undersigned notes also that Claimant never alleged a mental impairment as a disabling condition. The record referenced depression in 2009, but such condition did not resurface until November 2012, two months prior to the administrative hearing. Consequently, the record does not establish that Claimant had a mental impairment that lasted or was expected to last for a continuous period of no less than 12 months. See 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). Additionally, there was no impairment or resulting limitations for the ALJ to develop. Pursuant to 20 C.F.R. §§ 404.1519b and 916.919b, the Commissioner's decision to order a consultative evaluation is made on an individual basis. The Commissioner may order such an examination to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to make a decision. 404.1519a(b). The evidence neither established any inconsistency as to a mental impairment, nor was it insufficient for the ALJ to make a decision. Accordingly, the undersigned finds that the ALJ did not have a duty to develop the record by ordering a consultative examination respecting Claimant's alleged mental impairments.

2. RFC Assessment.

Claimant also alleges that the ALJ erred in assessing his RFC because she failed to include limitations in her RFC assessment that accounted for her moderate restrictions in concentration, persistence, and pace, and failed to present such limitations to the VE. (Document No. 13 at 10-11.) "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g.,

frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2012). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (2012).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)); rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and

14

416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§ 404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 404.1545 and 416.946 (2012). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings." Id. SSR 96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

The undersigned finds the Commissioner's arguments persuasive, respecting the ALJ's assessed RFC. At step two, the ALJ determined that Claimant's depressive disorder was a severe

impairment. Regardless as to whether the ALJ's step two decision was correct, she found that Claimant had a severe depressive disorder. (Tr. at 19.) At step three, clearly giving Claimant the benefit of the doubt, the ALJ found that Claimant's depressive disorder resulted in no limitations in maintaining activities of daily living and social functioning; moderate limitations in maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. at 20.) Regarding the moderate limitations, the ALJ found that the combination of the medical evidence and Claimant's testimony limited him to performing work that involved simple tasks and instructions. (Id.) Consequently, the ALJ assessed an RFC that limited Claimant to performing simple tasks and instructions. (Tr. at 21.) The Commissioner cites to the Third Circuit's opinion in Holley, 2014 WL 5334468, *1, for support of the ALJ's decision. In Holley, the claimant alleged that the ALJ erred in finding that she was capable of performing unskilled, sedentary work that required no more than 30 days of training because the ALJ had assessed moderate limitations in maintaining concentration, persistence, or pace. Id. The Third Circuit found that the ALJ was not required to advise the VE of the specific limitations in concentration, persistence, or pace. Id. The record contained little evidence reflecting mental impairments. Id. The Court concluded that the claimant provided no reason for spelling out the specific moderate limitations in the hypothetical question to the VE and found that the ALJ's recitation of the RFC assessment was sufficient. Id. In the instant matter, the ALJ provided the VE with the limitation to simple tasks or instructions. (Tr. at 51.) In view of the scant evidence of any mental impairment or limitations, the undersigned finds that the ALJ's recitation of her RFC findings to the VE was sufficient and adequately acknowledged the ALJ's concentration, persistence, or pace limitations.

    For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court

confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 13.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 14.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: August 31, 2015.

17  R. Clarke VanDervort
United States Magistrate Judge